**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ELEMENTS INTERNATIONAL GROUP, LLC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION, and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection,<br><br>Defendants. | Court No. 26-cv-03513 |

**COMPLAINT**

Plaintiff, Elements International Group, LLC., by its undersigned attorneys, alleges the following:

1. Plaintiff is an importer and challenges herein the assessment of certain duties upon its imported merchandise.

2. Beginning in February 2025, through a series of executive orders, the President invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose certain tariffs ("IEEPA Duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports.

3. Plaintiff is the importer of record of merchandise subject to the IEEPA Duties and timely paid those IEEPA Duties on its imported goods.

4. IEEPA does not authorize these tariffs. This Court, the U.S. Court of Appeals for the Federal Circuit ("CAFC") and the U.S. Supreme Court ("Supreme Court") have all so held. *Learning Resources, Inc. et al v. Trump, President of the United States, et al, No. 24-1287 ("*Learning Resources*"), together with No. 25-250, Trump, President of the United States, et al v V.O.S. Selections, Inc. et al., Argued November 5, 2025, Decided February 20, 2026* ("V.O.S. Selections").

5. Through this action, Plaintiff asks the Court to hold that, with respect to goods imported by Plaintiff, the IEEPA Duties collected by Defendants, and the underlying executive orders that directed them, are unlawful.

6. This separate action is necessary because, even as the IEEPA Duties and underlying executive orders are held unlawful by the Supreme Court, importers, including Plaintiff, who have paid IEEPA duties, are not guaranteed a refund for those unlawfully collected tariffs in the absence of their own judgment from this Court.

7. This action is necessary at this time because it is uncertain whether Defendants will issue refunds on liquidated entries even though the Supreme Court affirmed the holding of the CAFC in *V.O.S. Selections*. Plaintiff seeks relief from the impending liquidations and those already liquidated to ensure that its right to a complete refund is not jeopardized.

8. Accordingly, for itself, Plaintiff seeks (i) a declaration that the IEEPA Duties are unlawful; (ii) a full refund, with interest as required by law, from Defendants of all IEEPA Duties which Plaintiff has already paid to the United States, as well as those it will continue to pay.

## PARTIES

9. Plaintiff is an importer of various goods on which IEEPA Duties were paid.

10. Defendant United States received the disputed IEEPA Duties and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i).

11. Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security and is the United States agency which collects duties on imports. CBP collected the payments made by Plaintiff of the IEEPA Duties.

12. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

13. Defendants are referred to collectively in this complaint as the "Defendants."

## JURISDICTION AND STANDING

14. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i). *See V.O.S. Selections*, 149 F.4th at 1334. The Court has the same powers at law and in equity as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court may enter a money judgment against the United States and may order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

15. Plaintiff has standing to sue because it is "adversely affected or aggrieved" by agency action within the meaning of the Administrative Procedures Act. 5 U.S.C. § 702; 28 U.S.C. § 2631(i). IEEPA Duties imposed by Defendants adversely affected and aggrieved Plaintiff because, as importer of record, it was required to pay and did pay these unlawful duties.

16. Declaratory and injunctive relief from this Court would redress those injuries. Plaintiff also faces imminent and irreparable harm due to uncertainty as to whether Defendants will issue refunds of the IEEPA Duties as to liquidated entries.

17. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). On February 1, 2025, President Trump issued Executive Orders ("Orders") that resulted in the collection of IEEPA Duties. These Orders were published in the Federal Register shortly thereafter. The instant action is filed within two (2) years of the date these Orders were issued and published, and also within two (2) years from which Plaintiff first paid these IEEPA Duties.

## GENERAL PLEADINGS

### I. The IEEPA Tariff Orders

18. On February 1, 2025, President Trump issued three (3) executive orders (EO 14193, 14194 and 14195) imposing tariffs on imports from Canada, Mexico, and China.[1] Each executive order was premised on IEEPA authorizing the tariffs. Collectively, these are referred to in this Complaint as the "Trafficking Tariff Orders" as they relied on fentanyl imports for their foundation. Pursuant to these Orders, CBP assessed additional IEEPA duty upon some of Plaintiff's imported goods.

19. President Trump subsequently modified the China Trafficking Tariff Order.[2]

---

[1] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[2] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025); Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

20. On April 2, 2025, President Trump issued Executive Order 14257, 90 Fed. Reg. 15,041 ("Reciprocal Tariff Order"), *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*.[3] The Reciprocal Tariff Order imposed a ten percent (10%) baseline tariff on nearly all imports to the United States, effective April 5, 2025, and additional "reciprocal" tariffs on 57 countries, effective April 9, 2025. *Id.* at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id.*

21. President Trump subsequently modified the Reciprocal Tariff Order.[4]

22. In implementing the Executive Order based tariff regime, the Defendants directed changes to the Harmonized Tariff Schedule of the United States ("HTSUS"), requiring that goods subject to the challenged tariffs be entered under new tariff codes.

23. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, No. 25-cv-00066 (Dkt. 2). As discussed herein, this Court held the Orders were unlawful and the CAFC and the Supreme Court, subsequently, each affirmed.

24. In the months since the *V.O.S. Selections* complaint was filed, President Trump, invoking IEEPA, has issued additional executive orders imposing additional tariffs and modifying others. As explained herein, IEEPA does not authorize the President to impose tariffs. By this complaint, Plaintiff challenges those orders (the "IEEPA Tariff Orders") that

---

[3] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).
[4] Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025); Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025), 90 Fed. Reg. 15,625 (Apr. 15, 2025).

affect the duty rates on goods imported from the countries with which Plaintiff does business and for which Plaintiff pays duties (thus causing Plaintiff injury) and which the CAFC and Supreme Court have already held to be unlawful.

**II. CBP's Implementation of the IEEPA Tariff Orders**

25. CBP is charged with the assessment and collection of duties. 19 U.S.C. §§ 1500, 1502.

26. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs, including the IEEPA Duties, on the imported goods based upon their classification, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

27. "'Liquidation' means the final computation or assessment [by CBP] of duties on entries for consumption or drawback entries." 19 U.S.C. § 1500.

28. Typically, when goods are imported/entered, the importer of record pays an estimated amount on entry based on its customs declaration, which asserts a value, origin and classification for the imported goods. *See* 19 U.S.C. §1484. Then CBP reviews the customs declaration for accuracy and completeness.

29. CBP then calculates the final assessment by confirming the value, classification, duty rates, user fees and all other assessments. *See* 19 U.S.C. § 1500.

30. Once the final amount of IEEP Duties is determined by CBP, CBP "liquidates" each entry and notifies the importer of record as to whether the importer owes more money or is entitled to a refund. 19 U.S.C. § 1500.

31. Once liquidation has occurred,[5] and if the liquidation is protestable, the importer of record has 180 days after liquidation to file a protest contesting the liquidation and any other decisions made by CBP encompassed therein. 19 U.S.C. § 1514(a).

32. This Court and the CAFC have cautioned that in certain circumstances an importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66 (Ct. Int'l Trade 2021).; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

33. The U.S. Supreme Court decision did not address this issue.

34. This Court possesses the equitable authority to suspend liquidation. *See, e.g. In re Section 301 Cases*, 524 F. Supp. At 1365-66.

**III. Three Courts Have Held that IEEPA Does Not Authorize Assessment of Duties.**

35. The IEEPA Tariff Orders reference IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

36. None of these statutes authorizes the President to impose tariffs. Of these, Defendants have relied solely on the IEEPA statute in order to impose and collect the IEEPA Duties.

37. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections*, holding that IEEPA did not authorize assessment of IEEPA

[5] Typically, within one (1) year from date of entry. *See* 19 U.S.C. §1504(a).

Duties. This Court permanently enjoined the government from enforcing the IEEPA Duties at issue in that case and ordered the creation of a refund procedure by CBP.

38. Sitting *en banc*, the CAFC issued its decision on August 29, 2025, affirming this Court's decision also finding the IEEPA Duties are unlawful. *See V.O.S. Selections*.

39. In a separate lawsuit filed by a different group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Resources*. That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in *V.O.S. Selections* and *Learning Resources*.

40. The cases were consolidated, with argument before the Supreme Court on November 5, 2025. The decision followed and was issued on February 20, 2026 affirming the decisions of both lower courts. In short, the assessment of tariffs was found to be not legal under IEEPA as there was no language in the law cited which allows the imposition or collection of tariffs.

## IV. Plaintiff Paid Preliminary IEEPA Duties

41. Plaintiff's imports subject to IEEPA Duties entered the United States under new HTSUS classifications.

42. As of the date of this Complaint, Plaintiff has paid IEEPA Duties imposed by the IEEPA Tariff Orders.

## STATEMENT OF CLAIMS

## COUNT I

## THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES* UNDER V.O.S. SELECTIONS.

43. Plaintiff incorporates paragraphs 1- 42 above by reference.

44. The Court of International Trade in *V.O.S. Selection* held the President exceeded his authority under IEEPA when he imposed tariffs on imported goods.

45. The *V.O.S. Selections* Court held that: (a) IEEPA authorizes the President only to "investigate, regulate, or prohibit" importation; (b) IEEPA does not authorize the imposition of tariffs (i.e., taxes) on imports; and (c) neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates.

46. The CAFC affirmed that interpretation, holding Congress did not clearly delegate to the President the authority to impose tariffs under IEEPA. The CAFC further stated that construing IEEPA to permit such authority would raise grave constitutional concerns, including concerns under the major questions and non-delegation doctrines.

47. The Supreme Court concurred stating: "IEEPA does not authorize the President to impose tariffs." *V.O.S. Selections* at Page 2.

48. The executive orders challenged in this Complaint are materially identical in structure, authority claimed, and effect to those struck down in *V.O.S. Selections*. They purport to impose duties and to modify the HTSUS solely under IEEPA. For the same reasons set forth in *V.O.S. Selections,* the IEEPA Tariff Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio*, and without effect as applied to Plaintiff.

49. Plaintiff respectfully requests this Court apply the binding decision of the U.S. Supreme Court, declare the IEEPA Tariff Orders unlawful as to Plaintiff, enjoin Defendants

from enforcing them as to Plaintiff, and order refunds of all IEEPA Duties collected from Plaintiff, with interest as provided by law.

**COUNT III**

**(DECLARATORY RELIEF, 28 U.S.C. § 2201)**

50. Plaintiff incorporates paragraphs 1- 49 above by reference.

51. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

52. Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of Defendants to implement and collect the resulting tariffs, particularly as relates to liquidated entries.

53. Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA Duties as a result of the IEEPA Tariff Orders on goods it has imported into the United States.

This Court should exercise its equitable power to enter a declaratory judgment that the IEEPA Tariff Orders are unlawful for any or all of the above reasons, and that Defendants lack authority to implement and collect the resulting tariffs, as to Plaintiff, regardless of the liquidation status of Plaintiff's entries.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

a) declare the President lacks authority under IEEPA to set tariffs on goods imported by Plaintiff;

b) declare the IEEPA Tariff Orders are ultra vires and void ab initio with respect to Plaintiff;

c) declare that, with respect to Plaintiff, Defendants lack authority to implement and collect any tariffs set out in the HTSUS that are based on the IEEPA Tariff Orders;

d) with respect to Plaintiff, enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS which are based on the IEEPA Tariff Orders;

e) Order the United States to refund to Plaintiff all of the IEEPA duties collected on those entries, with interest as provided by law, regardless of their liquidation status;

f) award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action;

`g) award Plaintiff its reasonable costs, including attorney's fees, incurred in bringing this action; and

g) grant such further relief as this Court deems proper.

Respectfully submitted,

By: */s/Susan Kohn Ross*

Susan Kohn Ross (84868)
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Plaintiff

DATED: August 6, 2026

**CERTIFICATE OF SERVICE**

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on August 6, 2026, a copy of Plaintiff's Complaint was served on the following parties by certified mail, return receipt requested:

Justin R. Miller
Attorney-in-Charge
International Trade Field Office
Civil Division Commercial
Litigation Branch
26 Federal Plaza
Room 346
New York, NY 10278

U.S. International Trade Commission (USITC)
Eric J. Hamilton
Attorney-in-Charge
U.S. Department of Justice
Federal Programs Branch
Civil Division
950 Pennsylvania Avenue
Washington, DC 20436

/s/ Susan Kohn Ross
Susan Kohn Ross



21796324.1